

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00423-CV

**IN THE INTEREST OF J.G.M.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-01833
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  October 21, 2015

AFFIRMED

Appellant father ("Father") appeals the trial court's order terminating his parental rights to his child, J.G.M.  Father does not challenge the sufficiency of the evidence to support the trial court's findings under section 161.001(1) of the Texas Family Code ("the Code"), but contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child.  We affirm the trial court's order of termination.

### BACKGROUND

At birth in June of 2014, J.G.M. tested positive for opiates.  The matter was reported to the Texas Department of Family and Protective Services ("the Department").  J.G.M.'s mother admitted using marijuana, muscle relaxers, and Vicodin during the last month of her pregnancy.  According to the Department case worker who testified at trial, Father "didn't see the problem"

with the mother's drug use, stating she needed the drugs because she was in pain. In August 2014, the Department filed its original petition, which sought termination of the parental rights of both parents in the event reunification was impossible. That same month, after a hearing, the trial court awarded the Department temporary managing conservatorship of the child and granted Father and mother temporary possessory conservatorship. The Department created service plans for both parents, and the trial court conducted the required status and permanency hearings throughout the case.

Ultimately, the matter proceeded to a one-day bench trial. At trial, three witnesses testified: (1) Brandon Young, the Department case worker; (2) J.G.M.'s foster mother, Karen Mendiola Tanguma; and (3) J.G.M.'s mother. After the trial, the trial court ordered Father's and mother's parental rights terminated.[1] The trial court found Father: (1) knowingly placed or knowingly allowed the child to remain in conditions or surrounding that endangered the child's physical or emotional well-being; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being; (3) constructively abandoned the child; and (4) failed to comply with the provisions of a court order that established the actions necessary for him to obtain the return of the child. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), (N), (O) (West 2014). The trial court also found termination of Father's parental rights would be in the best interest of the child. *See id.* § 161.001(2). Thereafter, Father perfected this appeal.

### ANALYSIS

On appeal, Father does not challenge the evidence with regard to the trial court's findings under section 161.001(1) of the Texas Family Code ("the Code"). Rather, he contends the

---

[1] Although the trial court terminated mother's parental rights, she did not appeal the order of termination.

evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child.

### *Standard of Review*

Under the Code, a court has authority to terminate a parent's rights to a child only upon proof by clear and convincing evidence that the parent committed an act prohibited by section 161.001(1) of the Code, and that termination is in the best interest of the child.  *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied).  In the Code, "clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140.  This heightened standard of review is mandated because termination of a parent's rights to a child implicates due process in that it results in permanent and unalterable changes for both parent and child.  *E.A.G.*, 373 S.W.3d at 140. Therefore, when reviewing a trial court's termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With regard to legal sufficiency challenges in termination cases, we view the evidence in the light most favorable to the trial court's findings and judgment, and any disputed facts are resolved in favor of that court's findings if a reasonable fact finder could have so resolved them. *Id.*  We are required to disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if such evidence is contrary to the trial court's

findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We remain mindful that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

In a factual sufficiency review, we also give due deference to the trier of facts findings, avoiding substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### *Best Interests*

As set forth above, it is not enough for the trial court to find a parent committed an act prohibited by section 161.001(1) of the Code. Rather, for the trial court to terminate a parent's right to his child, the trial court must specifically find that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(2); *J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140.

#### *Applicable Law*

In making a best interest determination, we may take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home

or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976). These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.*

Although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)). In conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.) (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Additionally, a fact finder may judge a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

Moreover, although we must accept the strong presumption that maintaining the parent-child relationship is in a child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam), we also presume that permanently placing a child in a safe environment in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider that factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in, or returning to, the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b); *see A.S.*, 2014 WL 5839256, at *2.

### *The Evidence*

In reviewing the evidence, we have considered the *Holley* factors as well those as set out in section 263.307(b) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley*, 544 S.W.2d at 371–72. We have also considered the acts or omissions under section 161.001(1) of the Texas Family Code as determined by the trial court, as well as the circumstantial evidence, any subjective factors, and the totality of the evidence. *See A.S.*, 2014 WL 5839256, at *2.

1. *Desires of the Child*

The evidence shows J.G.M. was removed soon after birth. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. By the time of trial in June 2015, she was almost a year old. J.G.M.'s age makes it impossible for her to

express her desires with regard to conservatorship and renders her vulnerable if left in the custody of a parent who is unable to attend to her obvious needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and mental and physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. There was also some suggestion from certain testimony that J.G.M. suffers from developmental disabilities that would suggest vulnerabilities beyond her age. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

### 2. *Emotional & Physical Needs/Emotional & Physical Danger/Parental Abilities Stability of Home or Placement/Plans for the Child*

As noted above, J.G.M. is an infant. She will, therefore, require constant emotional and physical support. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. She is unable to care for herself in any way, dependent solely upon a caregiver for all her needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72. This need for emotional and physical support will continue for many years. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72.

With regard to the potential emotional and physical danger to J.G.M. if she were to be placed with Father, as well as Father's parenting abilities or lack thereof, Mr. Young — the Department case worker for the entirety of the case — testified there was concern about drug use with regard to both parents. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by those with access to child); *Holley*, 544 S.W.2d at 371–72. After J.G.M.'s mother admitted using drugs during the latter part of her pregnancy, Father stated he "didn't see the problem with [mother] using the drugs . . . [because] she was in pain." *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by those with access to child); *see id.* § 263.307(b)(12) (family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. Moreover, on the day of trial, Mr. Young asked the mother to take a urinalysis test, but she refused because Father

instructed her not to consent to a drug test unless he was present; Father did not appear for trial. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by those with access to child); *see id.* § 263.307(b)(12) (family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72.

Mr. Young also testified Father was "very standoffish and very confrontational." *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (willingness to cooperate with and facilitate supervision from appropriate agency). Mr. Young further advised that Father has pending criminal charges. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. J.G.M.'s mother testified Father has prior arrests for DWI and marijuana possession. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Mr. Young stated Father has never visited J.G.M. since she was removed — he was entitled to weekly visitation, and although "not sure," Mr. Young believed Father had not paid child support. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

As to the stability of Father's home, Mr. Young stated Father and mother are still together. However, they do not have a living space of their own, but are residing with a friend of the family. Apparently, the parents have been residing with the friend since J.G.M. was first removed.

In contrast to the foregoing, the Department presented testimony regarding J.G.M.'s current placement. *See Holley*, 544 S.W.2d at 371–72. J.G.M. was placed with mother's maternal aunt and uncle — Karen Mendiola Tanguma and Robert Tanguma. The placement was suggested by the parents. According to Mr. Young, J.G.M.'s current placement is very appropriate, and the child "is thriving and just doing wonderfully." *Id.* Mr. Young testified the Tangumas are meeting J.G.M.'s needs and they love her. *Id.* He has observed the child with the Tangumas and she appears bonded with them, and they provide her the stability she needs; she has everything a child

needs. *Id.* Mr. Young stated the aunt and uncle are willing to be a long-term placement for J.G.M. in the event her parents' rights are terminated. *Id.*

Ms. Tanguma also provided testimony about J.G.M.'s placement in her home, as well as J.G.M.'S physical condition. *See Holley*, 544 S.W.2d at 371–72. She and her husband picked J.G.M. up at the hospital when she was five days old, and she has been with them ever since. *Id.* Ms. Tanguma, who is a licensed vocational nurse, stated she has worked in a neonatal intensive care unit with babies going through withdrawal from drug exposure. She testified that when they picked J.G.M. up at the hospital, she noticed the child cried a lot and had trouble sleeping. The child also demonstrated fist clinching and tension, which are potential drug withdrawal symptoms. *See* TEX. FAM. CODE ANN. § 263.307(b)(3) (circumstances of harm to child); *Holley*, 544 S.W.2d at 371–72. However, Ms. Tanguma testified J.G.M. is developing normally and there are no concerns at this time about her development. Ms. Tanguma testified Father never contacted her to check on J.G.M.

Mr. Young concluded it was his opinion that Father's (and the mother's) rights should be terminated. He testified termination was in J.G.M.'s best interest because "through the life of the case" her parents "have not shown any type of motivation to be part of her life."

### 3. *Available Programs/Acts or Omissions Indicating Relationship Not Proper/Excuses*

As noted above, the Department created a service plan for Father. The plan set out tasks and goals for Father to complete and reach in order to regain full custody of J.G.M. Specifically, Father was required to complete drug therapy, and as there were domestic violence issues, Father was required to attend domestic violence classes for perpetrators. He was also supposed to submit to random drug testing, complete a psychological and psychosocial evaluation, attend parenting classes, and complete individual counseling. Father was required to demonstrate employment and stable housing.

Mr. Young admitted he was unable to meet with Father until June 2015, shortly before trial, in order to explain the requirements of the service plan. However, Mr. Young testified he had attempted to contact Father by telephone numerous times in 2014 — August, September, and October. Mr. Young stated that thereafter, in October 2014, J.G.M.'s mother called him and told him not to "contact them anymore." The mother advised there was "stuff that was going on with her and [Father], and that they would not be — they would not be participating in the case." Despite this, Mr. Young testified he tried to maintain contact, but the parents' telephones were disconnected after his first contact by phone, and the letter he sent to Father in November 2014 was returned.

According to Mr. Young, when he was finally able to meet with Father in June 2015 — two weeks before trial — Father indicated he wanted to complete his service plan in order to regain custody of J.G.M. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11) (willingness and ability to effect positive environmental and personal changes within reasonable time); *Holley*, 544 S.W.2d at 371–72. However, it is undisputed that as of the time of trial Father had not completed a single requirement on his service plan, although J.G.M.'s mother testified he is currently employed and earning $1,100 per week. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

No evidence was presented with regard to any excuse Father might have had for failing to engage in services prior to June of 2015 — other than his lack of contact with the Department. However, after meeting with Mr. Young in June 2015, both parents apparently set up a meeting for the following Monday — less than two weeks before trial — so they could learn what services were required. The parents failed to appear for the scheduled meeting; mother told Mr. Young they were unable to keep the appointment because their vehicle broke down. Father's trial counsel suggested the Department demonstrated a lack of diligence by failing to search for Father in an

attempt to contact him and this excused Father's failure to complete any task on the service plan. However, in response, Mr. Young testified it is not the Department's policy to search for parents at potential residences, particularly until they are able to obtain additional knowledge about them. Rather, the policy is to contact the parents by telephone and for meetings to take place on department premises. Given Father's failure to provide a good contact number or otherwise contact the Department until two weeks before trial, there was simply nothing the Department could do.

### *Application of the Law to the Evidence*

Father does not contest that he committed acts or omissions under section 161.001(1). *See C.H.*, 89 S.W.3d at 28. It is undisputed that Father made no attempt to contact the Department, complete required services, or even check on J.G.M.'s welfare until a mere two weeks before trial. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Father has prior arrests for DWI and drug possession, and he failed to see the potential problem with drug use by J.G.M.'s mother during the late stages of her pregnancy. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *id.* § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. According to the Department case worker, when he was in contact with the Department, Father was "standoffish" and "confrontational." *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *id.* § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

J.G.M. is currently in a foster home with her maternal aunt and uncle where her needs are met and she is loved and cared for. *See Holley*, 544 S.W.2d at 371–72. Ms. Tanguma and her husband have agreed to act as a long-term placement for the child in the event of termination. *Id.*

Recognizing that in conducting a best interest analysis, the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding

termination of Father's parental rights would be in J.G.M.'s best interest. *See A.S.*, 2014 WL 5839256, at *2. In other words, we hold the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in the child's best interest. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

We hold the evidence is legally and factually sufficient to allow the trial court to find termination of Father's parental rights was in the best interest of J.G.M. Accordingly, we overrule Father's issues and affirm the trial court's termination order.

Marialyn Barnard, Justice